DOWNEY v. LOZIER MOTOR CO.

(District Court, S. D. New York. May 5, 1905.)

1. SHIPPING—RIGHT TO POSSESSION OF ENGINE—FAILURE OF VESSEL OWNER TO PAY PURCHASE PRICE.

The owner of a yacht who had a gas engine installed therein to be tried for 30 days, and then either accepted and paid for or returned, and who, although not accepting the engine or paying anything for it, retained and used it for a year, is not entitled to recover possession of it from the builder, to whom it was returned for repairs, without paying the purchase price.

2. SAME—LIEN FOR EQUIPMENT—SURRENDER OF POSSESSION TO OWNER.

Respondents, who equipped libelant's yacht with an engine, lost the right to a common-law lien on the vessel for the price by surrendering possession to libelant without payment; and such right was not revived by a subsequent delivery of the vessel to respondents for repairs, although they were entitled to such lien for the value of the repairs then made.

In Admiralty. Suit for possession of vessel.

Albert A. Wray, for libellant.

Hatch, Keener & Clute and A. Delos Kneeland, for respondent.

ADAMS, District Judge. This action was brought by Wallace Downey against the Lozier Motor Company to recover possession of the yacht Marguerite.

The libellant alleges that the yacht was delivered to the respondent to make necessary repairs upon and alterations to her engine and the respondent has refused to re-deliver the yacht to him, notwithstanding due demand has been made therefor, and has wrongfully taken out part of the engine and retained the same.

The respondent alleges, in substance, that the libellant is not the

owner of the engine of the yacht or entitled to the possession thereof but that the respondent is entitled to possession by reason of certain work done on her at the instance of the libellant in installing a motor and 20 horse power Lozier engine about the 30th of May, 1903, for the sum of $1,000, which the libellant was to try for a period of 30 days and then pay $500 of the purchase price and the balance of $500 within 60 days thereafter, if the certain trips which were to be made, proved satisfactory, otherwise to return the motor and engine to the respondent; that thereafter the libellant had and used the said yacht with the motor and engine and by his acts and conduct in reference thereto he fully received, accepted and expressed his satisfaction therewith but has never paid a dollar therefor; that the libellant after he received the yacht placed an inexperienced and incompetent person in charge thereof as engineer, who negligently operated the engine and the boat so that she took in sand and crippled and injured the pump; that the libellant ran said engine and motor without the pump and used it without water circulating through the same as required in the operation thereof, on account of which the engine became broken and impaired, the pumps crippled, the nipples of the exhaust pipe melted and the engine discolored, hot and burnt and the clutch of the engine spoiled. It is further alleged that the libellant returned the yacht to the respondent on various occasions between the 30th of May, 1903, and June 11, 1904, the date of the filing of the libel herein, and during those times the respondent performed labor and services upon the yacht at the instance and request of the libellant, and furnished repairs thereto and thereupon, set forth in detail in an exhibit annexed to the answer herein; that the respondent furnished two or three new foundation beds for the engine and a new reversing clutch to take the place of one which had been injured by the said engineer of libellant, who operated the same when improperly driving the engine at full speed. It is further alleged that the reasonable value of the repairs referred to in said exhibit was $866.68 which with $1,000, the price of the engine, makes the sum of $1,866.68, which is due and owing from the libellant to the respondent and wholly unpaid. It is further alleged that the yacht was brought back to its yards at the request of the libellant prior to June 11, 1904, and left for further repairs and alterations which were made, and was so in their possession at the time of filing the libel and in consequence thereof the respondent claims a common law lien for the amount of the repairs and materials furnished. It is further alleged that when a demand was made by the libellant for the delivery of the yacht, a bill was presented for the repairs and for the engine and motor, and payment demanded but the same was refused and no part has ever been made. It is further alleged that on or about May 26, 1904, the libellant agreed for a valuable consideration that he would relinquish all claims that the engine was imperfect or out of order for any other cause than that of the neglect and abuse of his own engineer and agreed to pay for said repairs and on the following day thereafter refused to carry out the said agreement.

The testimony shows that such an agreement was originally made

as contended for by the respondent. It, however, desired to please the libellant, for advertising purposes, and did not insist upon a strict performance of the contract.

The beginning of the trouble between the parties arose out of a misunderstanding about the reversing clutch. The libellant expected one that would reverse full speed instantly as in steam engines but the respondent said its clutch would not stand such treatment nor would any one used with gas engines owing to the great number of revolutions made by them. A steam engine can be reversed instantly, owing to the moderate number of revolutions made by it, but the gas engine, making some 400 revolutions a minute, has ordinarily to be slowed down somewhat before it is reversed, so that the clutch will not be called upon to withstand an instant application of such a great strain as is incident to that number of revolutions. The libellant, however, insisted upon putting the engine constantly to such a test, with the result that the clutch almost invariably gave out and then the libellant condemned the engine. This seems to have been unreasonable. The propeller of the gas engine turns with such rapidity that an immediate reversal is actually impossible in practice without injury to the gear. The time that is required to reverse is practically not much greater than with steam engines, even when allowance is made for slowing the engine before the reversing takes place. In steam engines, a reversal is a much more complicated matter, requiring a little time to change the machinery from going in one direction to the opposite. In gas engines the machinery always goes the same way, but the clutch operates to turn the propeller in an opposite direction to that which the engine is going. This naturally requires a little time but that is not of importance as about 15 seconds suffices, and is probably not more than a vessel propelled by steam would take in the operation. The testimony indicates that this engine, operated in the method to preserve its integrity, would bring the vessel from full speed ahead to a stand still in the water in about two lengths, which is apparently not excessive.

It appears that the libellant was too exacting about the engine in all respects. The contract provided that he should furnish a bed for the engine and he first used one which had been provided for the small steam engine which he found insufficient to propel the boat as he wished, hence the desire to change, but when arrangements for the new engine were made, the old foundation was suffered to remain. It was, however, quickly found to be unsatisfactory on account of the excessive vibrations the rapid revolutions of the engine caused in the boat. Then the libellant had a new foundation put in and the engine was installed upon it, but the vibrations remained. The boat was then sent to the respondent's establishment at Plattsburgh, and the experts there condemned the foundation because, though substantial enough, it was not properly fastened to the frames of the boat. A new foundation was put in at Plattsburgh and when fastened to it, the engine did not cause any more vibration than necessarily attends a gas engine and the libellant in this respect ceased to find fault.

Another complaint of the libellant was that the pipe which was used to take in the water required by the engine was placed too much under the bottom of the boat and hence drew in sand which got into the machinery and caused trouble. It appears that it was placed near the keel in the usual place, as the credible testimony of the respondent shows, and such sand as found entrance was the result of the libellant's running the boat on sand bars, where it was not designed to navigate. It does not appear that there was any just cause of criticism in this respect.

Another complaint of the libellant was that sufficient speed was not attained by the engine but it appears that the revolutions which were mentioned to him were substantially furnished and in several instances, in writing, he expressed his satisfaction in such respect.

After going over the case very thoroughly, I find no merit in the libellant's contentions. I have no doubt that the principal trouble arose out of his repeated attempts to use the engine as he would a steam engine and his dissatisfaction because he could not obtain the same results. If he had used this engine properly, it would, in all probability, have yielded such satisfaction as he was entitled to. He had no right to demand that his requirements should in unreasonable respects be yielded to. He occupies a very inconsistent attitude in expecting possession of the engine while he contends that it continues to be unsatisfactory. He has not paid for it and apparently does not wish to, yet he contends that he should have it given to him as if he were the owner, when in fact he has no title.

The respondent on the other hand has gone great lengths in endeavoring to satisfy the libellant but without success.

The question remains, and it has not been discussed before me or in the briefs submitted, whether the respondent is entitled to hold the boat against the libellant under the common law possessory lien it claims. It is well settled that such lien is lost by a voluntary surrender of the possession. The General Smith, 4 Wheat. 438, 4 L. Ed. 609; 19 Eng. & Amer. Enc. of Law 28. There are no circumstances here from which a revival of the lien might be inferred. It seems that no idea of a lien existed until after the respondent last obtained possession, and the boat had been many times in the possession of the libellant since the installation of the engine, so that it can scarcely be held that the lien, which may have existed in the beginning, remained throughout the time the parties were disagreeing about the work.

It appears, however, that since the boat last went into the possession of the respondent, work has been done on her to the extent of $222.98, for which it is apparently entitled to a lien. To that extent the respondent is justified in retaining possession. If the libellant wishes to contest the correctness of this amount which is taken from the bill annexed to the answer and is supported by the respondent's testimony in a general way, he may move for a reference for such purpose.

Libel dismissed. Decree to be settled upon 5 days' notice